## FRANKLIN v. FRANKLIN

Court of Chancery of New Jersey
June 28, 1948.

John E. Toolan and Hulyer E. Romond, both of Perth Amboy, for petitioner.

Kristeller & Zucker and Herman E. Dultz, all of Newark, for defendant.

TOMASULO, A. M.

The above matter involves three separate appeals and comprises another phase of a litigation instituted by the husband against his wife for a divorce on the ground of desertion. The original divorce petition was dismissed by the court under decree dated October 23, 1946, which decree, inter alia, provided: "It is Further Ordered that the petitioner pay to the defendant or to her solicitors the annual sum of $3000.00 in equal monthly installments of $250.00 commencing upon the date this Decree, as and for the support and maintenance of herself and William Al-

bert Franklin, the infant son of said marriage, in her custody, until the further order of the Court."

This decree was affirmed by the Court of Errors and Appeals, 52 A.2d 841, in its entirety.

After the dismissal of the husband's divorce petition, the wife continued to reside in the State of Virginia with the child of the marriage and the husband continued to reside in Woodbridge, New Jersey. It appears that thereafter, the husband and wife were involved in a proceeding in Virginia which resulted in the confinement of the wife in a mental institution. She was subsequently released through habeas corpus proceedings brought by her. The commitment of the wife to the mental institution took place on or about January 20, 1948. On January 19, 1948 the husband instituted habeas corpus proceedings involving William A. Franklin, the son of the marriage, in which proceedings, the wife was directed to produce the infant before the judge of the Fairfax County Court (Virginia).

Sometime between January 19, 1948, (the date of the institution of the habeas corpus proceedings by the husband), and January 30, 1948, the date on which the wife was released from the mental institution, the husband acquired physical possession and custody of the child.

On February 16, 1948, the wife filed a petition in this court in which the foregoing facts are recited in addition to an allegation in which she states as follows: "Defendant is fearful, in view of the acts of the petitioner herein set forth and more particularly described in the affidavit hereto annexed and made a part hereof, that the petitioner will leave the State of New Jersey so that he cannot be held to perform the obligations of the final decree in this cause and will remove the child, William Albert Franklin, without the jurisdiction of this honorable court so that the defendant will be unable to obtain the relief to which she is entitled, and will be unable to obtain support and maintenance for herself and the infant child of the said marriage which has heretofore been ordered in her custody."

Upon the basis of the foregoing petition, the wife prayed:

(1) That her husband be adjudged in contempt of this court in that he refused and neglected to comply with the order of the court and permitting the custody of the said infant child, William A. Franklin to remain with the defendant as ordered in the final decree and that he be punished accordingly, and,

(2) That a writ of ne exeat be issued to prevent the petitioner from departing from New Jersey.

An order to show cause was entered upon the foregoing petition by which the husband was directed to show cause why he should not be adjudged guilty of contempt of this court in accordance with the prayer of the petition. Included in the order to show cause was an order granting the writ of ne exeat.

On June 21, 1948, after considering the petition and proofs filed in support of their respective positions, and the oral arguments as well as briefs of counsel, an order was entered determining that the husband was not guilty of contempt of the court as charged in the petition filed by the wife, and discharging the order to show cause dated February 16, 1948. Thereupon, the husband made application for an order dismissing the writ of ne exeat, and after again considering the proofs before the court, as well as oral arguments and briefs of respective counsel, an order was entered on June 29, 1948 discharging the writ of ne exeat and directing the sheriff to release the husband from custody. On June 7, 1948, the wife had, through counsel, made application to stay the dismissal of the writ of ne exeat pending the outcome of the appeal respecting the contempt proceedings referred to above. The application to stay the dismissal of the writ of ne exeat was made in the form of a letter which follows at length:

"Dultz, Miller, Gelfond & Zeller
Counsellors at Law

972 Broad Street
Newark 2, N. J.

June 7, 1948

Hon. Nicholas A. Tomasulo,
Advisory Master,
Chancery Chambers,
Newark,
N. J.

Re: Franklin v. Franklin
155-375

Dear Advisory Master:

Since your conclusions filed in the above entitled matter denying Mrs. Franklin's application to hold her husband in contempt of court, we have been served by the office of John E. Toolan, Esq., that an application is to be made to 'dismiss and discharge the writ of ne exeat republica issued against the petitioner William Robert Franklin, by order of this court dated February 16, 1948.'

In view of the fact that we have been authorized to take an appeal from your Honor's ruling as soon as the order is entered, I wish you would be good enough to withhold your decision on the dismissal of the ne exeat in case you are inclined to do so, until the Court of Errors and Appeals decides the contempt proceedings.

This letter is written to you following the case of Tracy vs. Tracy, 140 N. J. Equity 496.

Thanking you for any consideration that is extended to us, we are,

Yours respectfully,

Kristeller & Zucker, Esqs.,
By Herman E. Dultz,
Of Counsel."

On July 9, 1948 an order was entered denying the aforesaid application to stay the discharge of the writ of ne exeat. From this order a Notice of Appeal was filed on July 27, 1948.

The third order being appealed from is an order entered on July 21, 1948 in which the court denied an application of the solicitor of the wife for a counsel fee of $1,000 for services rendered in the proceedings instituted in this court resulting in the order issued on February 16, 1948 requiring the husband to show cause why he should not be adjudged in contempt. From this latter order a Notice of Appeal was filed on July 28, 1948.

The general rule respecting one's liability for contempt of an order of a court is: "To justify adjudging one guilty of contempt for the alleged violation of an order, the order must be so clearly expressed that when applied to the act complained of it will appear with reasonable certainty that it has been violated. Hence, a party cannot be punished for contempt for failure to obey an order which is contradictory, or for failing to do something not specified in the order."

This rule is based upon sound logic since it requires that an order alleged to be violated must be specific, clear and precise, so that one need not resort to inference or implications to ascertain a duty or an obligation. A command must be expressed rather than implied. McCaleb v. McCaleb, 177 Cal. 147, 169 P. 1023; Berry v. Midtown Service Corp., 2 Cir., 104 F.2d 107.

It is universally established that the power to punish for contempt is inherently necessary to enable courts to preserve their own dignity and to administer justice. State v. Howell, 80 Conn. 668, 69 A. 1057. In re Jibb, 121 N.J.Eq. 531, 191 A. 552.

Contempt presupposes an order of a court of competent jurisdiction, since an adjudication of contempt may be predicated only on contumacious disregard of some writ, precept, decree, order or command. In re Roberts, 133 N.J.Eq. 122, 30 A.2d 900. And contempts have been classified as being either criminal or civil, the purpose of criminal contempt being to vindicate the authority of the law, while the purpose of civil contempt is to compel obedience. Markle v. Local Union No. 641 et al., 131 N.J.Eq. 202, 24 A.2d 364. So also, civil contempt may con-

sist in failing to do something ordered by a court for the benefit of an opposing party. Lief v. Lief, 14 N.J.Misc. 27, 178 A. 762. From a reading of these cases, it is obvious that the gravamen of contempt is a disobedience of an order, for one can neither obey nor disobey a directive which is non-existent. To determine whether a contempt has been committed the writ should be the criterion for the party who is enjoined because it embodies the order of the court. Richard v. West, 3 N.J.Eq. 456, and the writ should always be plain and certain on its face so that the party may understand it without any reference to the bill filed. Richard v. West, supra.

■■ Thus, when those enjoined by a decree in Equity are charged with having violated it, its violation must be made to clearly and satisfactorily appear by the person asking for its enforcement. Sullivan v. Jones & Laughlin Steel Co., 222 Pa. 72, 70 A. page 775 and a Chancellor will not punish unless the guilt of the enjoined be clearly established. Probasco v. Probasco, 30 N.J.Eq. 161, because the entry of an order of injunction is in some respects analogous to the publication of a penal statute in that it is notice to the party that certain things must be done or not done under a penalty to be fixed. The language of such notice should not be stretched to cover acts not fairly and reasonably within its meaning. Wisconsin Central Railroad Co. v. Smith, 52 Wis. 140, 8 N.W. 613.

■ An examination of the decree of dismissal in the divorce proceedings brought by the husband upon which the instant contempt proceedings were based, discloses no order which directs the husband to engage or not to engage in the course of conduct of which his wife complains. To be sure, the actual physical custody of the child remained with the wife, but this was not the result of any custody award or order made by this court. Neither of the parties made an issue of custody in the divorce proceedings and the wife retained the custody of the child after the divorce proceedings were dismissed, as theretofore. There was no order prohibiting or enjoining the husband from doing what he did unless such an injunction can be read into the decree by implication or in-

ference. In a proceeding such as this, I am reluctant to do so and I have therefore concluded that no contempt has been committed by the husband and consequently, the order to show cause is dismissed.

Since counsel fees (which are the subject matter of the third appeal) were sought in the contempt proceedings which were hereinabove dismissed, it is perhaps well to dispose of this question now. An award of counsel fees against a successful litigant has, even though permitted by statute, R.S. 2:29–132, N.J.S.A., been determined to be a matter of discretion. Hilton v. Hilton, 89 N.J.Eq. 422, 105 A. 65.

In the exercise of my discretion, I was not moved by the extraneous allegations and proofs in this matter which related to the proceedings in Virginia excepting insofar as they had a bearing on the question of contempt. If the wife had been interested only in procuring the custody of the child, this could have been accomplished through a direct proceeding brought by her for that purpose in which she could, upon satisfying the court of the correctness of her position, obtain an adjudication respecting the custody of the child. This she did not do; instead she chose, in my judgment, a proceeding which suggests a frame of mind on her part, borne of animus, vindictiveness and vengeance. Under such circumstances I do not believe that the husband should be called upon to contribute to the cost of unsuccessfully prosecuting a mis-conceived remedy. I therefore deny counsel fees.

This brings me to the remaining question embraced in the second appeal. As will be noted, a reference to the record discloses that on June 21, 1948 an order was entered dismissing the contempt proceedings against the husband.

Upon receipt of the court's conclusions in connection with the contempt proceedings, the solicitor for the husband made an application upon proper notice, to dismiss and discharge the writ of ne exeat theretofore issued. Thereupon the solicitors of the wife made what the court

entertained as an application to stay the dismissal of the ne exeat proceedings; the order for dismissal of the ne exeat proceedings not yet having been entered although the respective solicitors had been advised of the court's decision to dismiss the writ of ne exeat.

The basis of the application for the stay was a contemplated appeal from the order of the court dismissing the contempt proceedings entered on June 21, 1948, as is apparent from a reading of the letter, supra. The authority cited in this letter in support of this application, Tracy v. Tracy, 140 N.J.Eq. 496, 54 A.2d 818. An examination of the Tracy case reveals that it involved an application for a stay of an order which was the subject matter of the appeal. The obvious purpose for the requested stay in the Tracy case was to maintain and preserve the status quo of that phase of the litigation pending the appeal. In the instant case the stay requested by the solicitors of the wife related to the proposed entry of an order dismissing the writ of ne exeat pending a contemplated appeal from the order dismissing the contempt proceedings. This was not the situation presented in the Tracy case. I therefore concluded this was unauthorized by the holding in the Tracy case and consequently I advised the order dismissing the writ of ne exeat.